*In re* McNeil's Will.

(*Surrogate's Court, New York County.* May 11, 1888.)

Trusts—Validity—Accumulation of Trust Fund.

A bequest of all testator's property, in trust, in which the trustees named are directed to pay one-half the income to the testator's widow during her life, to support his minor son out of the remainder of the income, and to surrender absolutely the entire estate, with its accumulations, to the son after the death of the widow and the majority of the son, does not create an invalid trust for the accumulation of the income of decedent's property.

On petition for the probate of John McNeil's will.

*Adolphus D. Pape,* for executor, proponent. *William H. Townley,* for the widow, contestant. *Sodislas Karge,* for minor child.

Ransom, Surrogate. The instrument offered as the will creates a trust, and bequeaths half the income of the trust-estate to the decedent's wife for life, and out of the remainder of the income to pay for the maintenance of their son, a minor, and commits the care of the son to the executors as guardians. It directs that the son shall not be educated in the Roman Catholic religion, but shall be reared as a Protestant, and that his guardians shall devote no portion of the income for the son in any other than an institution under Protestant direction. Except as to the religious education of his son, he desires his wife's wishes to be consulted. The provision in respect to the education of the son is the cause of the contest; the widow having filed objections to the will, alleging that it was not duly executed as prescribed by the statute, and that the decedent was not competent to make a testamentary disposition of his property; and she puts in issue the validity of the will on the ground that it provides for the undue accumulation of the income for the benefit of the son, and that, by it, there is an illegal suspension of the power of alienation of the personal property. The special guardian also filed objections to the probate, alleging that the decedent was not in sound mind, and questioning the validity of the trust.

The instrument was executed on the 9th of July, 1881, on the day the decedent was about to leave for Europe. The subscribing witnesses were Mr. Pape, the draughtsman of the will, and who had been the attorney for the decedent for several years, and Mr. Quinn and Mr. Hanna, who were intimate acquaintances. The testimony of Pape and Quinn shows that the will was properly executed. Mr. Hanna, the third witness, was extremely deaf, and was unable to testify to hearing the decedent state the nature of the paper, but he says that the decedent and the other witnesses signed it, and he signed it at the request of the decedent; and Mr. Pape testifies that he received the instructions for drawing the will from the decedent himself, and that its terms conform to the instructions received. The instrument was executed in the office of the liquor saloon of the decedent, on the corner of Seventh avenue and Seventeenth street. There is evidence going to show that the decedent was addicted to the use of intoxicating liquors, but the proof is that he was in the full possession of his faculties at the time of executing the will. He appears to have been always violent in his denunciations of the Roman Catholic Church, and the directions in respect to the education of his son doubtless reflects a well-considered purpose. At the conclusion of the proponent's testimony, the counsel for the widow, who had filed objections, withdrew from the case, stating that he had no testimony to offer; but the special guardian continued the contest, under the belief that he would be able to throw doubt upon the decedent knowing the contents of the will in respect to the appointment of one of its executors, or to show the execution of a subsequent testamentary instrument. It appears by the testimony that, previous and long subsequent to the execution of the paper, the decedent spoke in disparaging terms of Mr. Bradley, one of the executors named, and also said that one of

the executors was Mr. James Gregory, and he made the same statement to Mr. Gregory himself. These declarations, so inconsistent with the nomination of Mr. Bradley, are not explained in the evidence; but Mr. Pape, the draughtsman of the will, states that Mr. Bradley was master of the lodge of which decedent was a member; and, further, that the decedent asked him, at the time of taking the instructions, what he thought of Bradley for an executor, and he replied that he would be all right. Mr. Pape testifies, also, that, a few months before the decedent's death, the will was read over to him in full, and at that time the decedent spoke of substituting Mr. Gregory as the executor in place of Mr. Bradley, but that Mr. Gregory and his wife could not agree. No instrument, however, was prepared in accordance with the suggestion, and the will remained intact until the decedent's death. The special guardian signally failed to prove anything that should lead me to doubt that the instrument expresses the testamentary wishes of the decedent at the time it was executed and down to his death.

The special guardian earnestly contends that the paper offered for probate creates an invalid and unlawful trust for the accumulation of the income of the property of the decedent. This contention is not sound. The will does not, in terms nor in scheme, attempt to create such a trust, as will be seen by a careful reading of it. The executors are not directed to accumulate. They are simply required to support, educate, and maintain the decedent's son during his minority, and to pay therefor out of the income of one-half of the estate, the whole of which is devised and bequeathed to them. The entire income of the other half they are directed to pay over to the widow during her life. At the death of the widow the entire estate and any accumulations—that is, any increase thereof—shall go to the son, who, after arriving at 21 years of age, in the event that his mother is then living, has no interest whatever in the estate or its income during her life, except such sum as the executors may from time to time advance to him out of the income as they may think proper, as provided by the sixth clause of the will. But, if his mother be not living on his arrival at majority, he is then entitled to the whole estate, and any increase or accumulation thereof, as provided in the fourth clause of the will. The paper propounded must be admitted to probate.